# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| O'Chauncey Maddux, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 14-00351 (APM) |
| ) | |
| District of Columbia, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

Plaintiff O'Chauncey Maddux claims that, on November 14, 2013, he was assaulted, battered, and falsely imprisoned by members of the District of Columbia Metropolitan Police Department.  The incident left him with a broken hand.  Plaintiff brought suit against the District of Columbia and the two police officers who he alleges unlawfully seized and injured him, Officer Robert Hamrick and Officer Maurice McDonald.  Plaintiff, however, never served Officer McDonald with his Complaint, leaving only the District and Officer Hamrick as the defendants before the court.  Defendants now seek entry of summary judgment[1] in their favor on three of Plaintiff's claims:  (1) excessive force and unlawful seizure in violation of 42 U.S.C. § 1983; (2) assault and battery; and (3) false imprisonment.[2]

---

[1] Although Defendants have styled their motion as a "Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment," ECF No. 20, because the parties have presented facts outside the pleadings, Defendants' Motion is properly treated as one for summary judgment under Federal Rule of Civil Procedure 56, and not under Rule 12(c).  *See* Fed. R. Civ. P. 12(d).

[2] Plaintiff brought two other claims: negligent infliction of emotional distress (Count II) and negligent training/supervision (Count IV).  Plaintiff does not contest entry of summary judgment for Defendants on those two claims.  The court, therefore, grants Defendants' Motion as to Counts II and IV of Plaintiff's Complaint.

After considering the parties' arguments, the court grants summary judgment in favor of Officer Hamrick on the excessive force component of Plaintiff's Section 1983 claim.  It also grants summary judgment in favor of the District on the aspect of Plaintiff's assault and battery claim that relies on the conduct of Officer McDonald.  However, the court denies Defendants' Motion as to: (1) the unlawful seizure component of Plaintiff's claim under Section 1983 against Officer Hamrick; (2) Plaintiff's assault and battery claim against Officer Hamrick and the District; and (3) Plaintiff's false imprisonment claim against Officer Hamrick and the District.

## II.    BACKGROUND

### A.    Factual Background

The facts in this case are substantially in dispute.  The court, therefore, separately sets forth below the versions of the facts as asserted by Officers Robert Hamrick and Maurice McDonald, on the one hand, and by Plaintiff and his father, on the other.

#### 1.    The Officers' Version of Events

According to Officers Hamrick and McDonald, they were on warrant duty on the afternoon of November 14, 2013, when they approached a McDonald's restaurant located at 4900 South Dakota Avenue in Northeast Washington, D.C.  *See* Deposition of Robert Hamrick, ECF No. 22-5, at 11:11-12:14 [hereinafter Hamrick Dep.].  Hamrick testified that, when he and McDonald arrived on the scene, a group of school-aged kids whom they had seen outside the restaurant earlier in the day were still there.  *Id.* at 12:12-13:22.  (McDonald, on the other hand, could not recall whether he had seen any juveniles earlier in the day at the McDonald's.  Deposition of Maurice McDonald, ECF No. 22-7, at 15:7-17 [hereinafter McDonald Dep.].)  Hamrick and McDonald sought assistance from D.C. Metropolitan Police Department Truancy Officers—specialized officers tasked with investigating juveniles for their absence from school.  After Truancy Officers

Kenneth Parker and Irene Smith[3] arrived at the McDonald's, Hamrick and McDonald pulled their car into the restaurant parking lot to provide assistance. Hamrick Dep. at 20:5-21:11; McDonald Dep. at 39:17-22. According to Hamrick, as he began walking toward the McDonald's, he observed Plaintiff walking away from the restaurant and toward an alley. Hamrick Dep. at 34:1-8. He suspected that Plaintiff was between the ages of 12 and 16. *Id.* at 23:16-19.

Hamrick approached Plaintiff and asked Plaintiff to walk toward him. Plaintiff asked why, and Hamrick told Plaintiff that he looked like a truant and that he needed to verify Plaintiff's age. *Id.* at 35:7-14. Plaintiff stopped walking and responded that he was 19 years old. *Id.* at 35:16-17. Hamrick, however, did not believe Plaintiff and continued to ask him questions in order to verify his age, including asking for identification. *Id.* at 26:6-26:7, 35:16-22. Plaintiff did not have any form of identification with him. *Id.* at 46:8-10. Officer Hamrick explained that he would need to conduct a truancy investigation to verify Plaintiff's age. *Id.* at 53:19-54:6.

Shortly after Hamrick stopped Plaintiff, Truancy Officer Smith approached. According to Hamrick, Smith agreed with him that Plaintiff "looked to be a truant." *Id.* at 60:13-14. She explained to Plaintiff that they needed to conduct a truancy investigation. *Id.* at 59:11-60:21. Hamrick testified that, at the point Smith confirmed Plaintiff looked like a truant, Plaintiff was not free to leave until the officers completed their investigation. *Id.* at 60:13-21. Before then, he could have walked away. *Id.* at 55:13-57:3.

Meanwhile, McDonald had approached another youth, named D'Andre, who initially was seen with Plaintiff, but who had walked toward and then entered a car parked in the McDonald's parking lot. McDonald Dep. at 39:17-40:11, 56:20-57:5. Inside the car was Chauncey Leroy Maddux—Plaintiff's father. *Id.* According to McDonald, Leroy Maddux became irate when

---

[3] In their briefs and discovery materials, the parties sometimes refer to Smith as "Reyes-Smith." *See, e.g.*, Defs.' Mot. at 4; Hamrick Dep. at 21:12. The court refers to her as "Smith" throughout this Memorandum Opinion.

McDonald tried to question D'Andre. *Id.* at 57:1-4. Leroy Maddux claimed that D'Andre was his son, "went on a rant," and "threated to sue" the police. *Id.* at 59:18-60:3. McDonald continued to try to question D'Andre but eventually deferred to Truancy Officer Parker, who was accompanying McDonald. *Id.* at 65:3-6. D'Andre ultimately produced identification that proved his age, but demonstrated that Leroy Maddux was not his father. *Id.* at 59:21-60:3. Leroy Maddux then instead claimed to be D'Andre's legal guardian. *Id.* at 60:1-3.

Thereafter, Leroy Maddux left his car and intervened in the ongoing conversation between Hamrick and Plaintiff. Hamrick Dep. at 36:7. Leroy Maddux told Hamrick that Plaintiff was his son. *Id.* at 43:21-44:1. According to Hamrick, the officers did not believe Leroy Maddux because he had "claimed every child that we had stopped . . . w[as] his son[ ]." *Id.* at 43:19-44:7. Hamrick testified that Leroy Maddux's presence made Plaintiff increasingly unruly, combative, and uncooperative. *Id.* at 53:15-54:6. Plaintiff became verbally aggressive and balled his fists, *id.* at 48:17-21, and this behavior led Hamrick to take out his handcuffs. *Id.* at 61:9-11. Hamrick explained to Plaintiff that he was going to handcuff him because Plaintiff was agitated, which caused Plaintiff to calm down and cooperate. *Id.* at 65:1-21. According to Hamrick, Plaintiff voluntarily "handed" him his left arm to be handcuffed, *id.* at 65:8-12, and then "handed" him his right arm, *id.* at 65:22-66:2. Hamrick told Plaintiff that he was not under arrest. *Id.* at 65:2-5. As Hamrick handcuffed Plaintiff, Plaintiff informed Hamrick that his right hand had been injured and in a cast, which had since been removed, but the arm still bothered him. *Id.* at 66:6-13. According to Hamrick, he had not touched Plaintiff prior to handcuffing him. *Id.* at 49:8-18.

McDonald's testimony minimally corroborated the foregoing events. McDonald stated that he followed Leroy Maddux to where Plaintiff and Hamrick were standing and heard Leroy Maddux repeatedly say that Plaintiff was his son. McDonald Dep. at 71:1-3. McDonald said that

both Leroy Maddux and the youth he claimed was his son were "getting irate." *Id.* at 73:1-2. McDonald recalled that the youth—who McDonald was unable to identify during his deposition, *id.* at 74:14-18—was placed in handcuffs while McDonald tried to calm down Leroy Maddux, *id.* at 73:3-4. McDonald did not recall personally handcuffing the youth. *Id.* at 73:12-14.

According to Hamrick, after Plaintiff was handcuffed, the officers walked him to Hamrick's police car and placed him inside, leaving the door open. Hamrick Dep. at 66:14-67:2. While Plaintiff remained in the car, Hamrick ran a database search, based on information Plaintiff provided, in order to confirm Plaintiff's identity. *Id.* at 76:1-7. Hamrick verified that Plaintiff had no outstanding warrants. *Id.* at 76:8-9. Also, during this time, Parker saw Plaintiff and confirmed that Plaintiff was not a truant. *Id.* at 77:5-9.

### 2.   *Plaintiff's and Leroy Maddux's Version of Events*

Plaintiff and his father, Leroy Maddux, recounted a very different series of events. Plaintiff testified that, shortly after leaving the McDonald's, he began to walk toward his father's car when Hamrick and a female Truancy Officer approached him. Deposition of O'Chauncey Maddux, ECF No. 20-2, at 34:6-11, 54:21-22 [hereinafter Pl. Dep.]. Hamrick said: "Stop. This is a truancy investigation." *Id.* at 34:10-13. Plaintiff responded that he was over the age of 18, insisting "that has nothing to do with me," and continued walking. *Id.* at 34:14-22. Hamrick then put his hand on Plaintiff and said "stop, motherfucker." *Id.* at 35:7-9, 55:8. Plaintiff stopped as ordered, but continued to tell Hamrick that he was over 18 and that "this has nothing to do with me." *Id.* at 35:7-18. Plaintiff then leaned against a parked car to demonstrate that he did not intend to run. *Id.* at 62:10-18. Nevertheless, Hamrick continued to berate and curse at him. *Id.* at 36:2-5, 52:14-19, 62:19-63:2.

According to Plaintiff, the female truancy officer who was with Hamrick—Smith—had stopped him in the past, when he was in high school, for truancy investigations. *Id.* at 36:12-37:1. Plaintiff stated that Smith had stopped him "[m]ore than enough times for [her] to recognize me and know my age." *Id.* at 36:18-19, 39:2-5. Plaintiff testified that he told Hamrick that the Truancy Officer could confirm that he was older than 18. *Id.* at 44:10-13. But despite her history with Plaintiff, Smith remained silent the entire time. *Id.* at 36:6-8, 44:3-45:1.

Eventually, Hamrick asked Plaintiff for identification. *Id.* at 45:7-13. Plaintiff responded that he would have to ask his father to verify his age and pointed out that his father was nearby. *Id.* Hamrick then grabbed Plaintiff's left arm, walked him to another car, and placed him against the back of it. *Id.* at 45:14-17, 63:16-64:20, 65:3-11. Hamrick pulled out his handcuffs and ordered Plaintiff to put his hands behind his back. *Id.* at 67:6-8. Plaintiff complied, but told Hamrick about his injured hand. *Id.* at 67:16-21.

Before Hamrick could handcuff him, McDonald walked toward Plaintiff, "huffing and pouting and, like, just angry," and grabbed the handcuffs from Hamrick. *Id.* at 45:17-46:3, 48:5-20, 68:1-8. Plaintiff said to McDonald: "Can you please watch my hand[?] I don't want you to do anything to harm it." *Id.* at 46:4-6. McDonald—*not Hamrick*—then took Plaintiff's right hand and twisted it, while handcuffing him. *Id.* at 46:7-13, 68:9-69:6. Plaintiff heard a "pop" sound and exclaimed that his hand was broken. *Id.* at 46:11-16. McDonald nevertheless handcuffed Plaintiff and then walked him to his police car. *Id.* at 70:1-9, 71:15-19. According to Plaintiff, his father approached only after he was in handcuffs. *Id.* at 70:22-71:10.

Plaintiff's father's recollection of the sequence of events differs somewhat from that of his son. Leroy Maddux testified that he left his car after he saw Hamrick grab his son and walk him toward a car. Deposition of Chauncey Leroy Maddux, ECF No. 20-3, at 55:20-56:8, 59:18-60:14

[hereinafter Leroy Maddux Dep.].  Truancy Officer Smith was with Hamrick, but McDonald was not.  *Id.* at 61:10-62:2.  Leroy Maddux asked Hamrick what was happening, and Hamrick responded that Plaintiff fit the description of a suspect who had committed a crime earlier that morning, but refused to disclose the alleged crime.  *Id.* at 62:9-63:2, 68:6-16.  McDonald then approached Leroy Maddux, who continued to talk to Hamrick, and told him to back up.  *Id.* at 69:1-70:21.  McDonald told Hamrick to "watch the perp"—by which he meant Leroy Maddux— took the handcuffs from Hamrick, and handcuffed Plaintiff.  *Id.* at 77:18-79:22.  Leroy Maddux heard his son say:  "[They] broke my hand."  *Id.* at 83:21-22.  As the officers took Plaintiff to the police car, Hamrick told Leroy Maddux that they had stopped Plaintiff to conduct a truancy investigation.  *Id.* at 82:18-83:3.  Parker then called a school and verified that Plaintiff was not a truant.  *Id.* at 88:20-89:5.  The officers then released Plaintiff.  *Id.* at 91:20-92:2.

### B.     Procedural History

On January 27, 2014, Plaintiff filed suit against the District of Columbia and Officers Hamrick and McDonald (the "Defendant Officers") in the Superior Court of the District of Columbia.    Compl., ECF No.  1-1.    Plaintiff advanced five claims in his Complaint: (1) false imprisonment (Count I); (2) negligent infliction of emotional distress (Count II); (3) assault and battery (Count III); (4) negligent training and supervision (Count IV); and (5) violations of 42 U.S.C. § 1983 (Count V).  *Id.* at 5-9.  Plaintiff asserted his common law tort claims against both the District and the Defendant Officers, and his claim for negligent training and supervision only against the District.  *Id.* at 5-8.  Plaintiff brought his Section 1983 claim only

against the Defendant Officers; he did not advance a claim of municipal liability against the District.  *See id.* at 8-9.[4]

On March 4, 2014, Defendants removed the case to this court.  Notice of Removal, ECF No. 1, at 1.  Although Plaintiff served his Complaint on the District and Hamrick, he never served it on McDonald.  Therefore, the District and Hamrick are the only defendants before the court.  On June 1, 2015, the District and Hamrick moved for summary judgment on all claims. Defs.' Mot. for J. on the Pleadings, ECF No. 20 [hereinafter Defs.' Mot.].  Plaintiff did not contest summary judgment as to the claims of negligent infliction of emotional distress and negligent training and supervision, but did contest the Motion in all other respects.  Pl.'s Reply at 1.

The following issues thus remain for resolution:  (1) Hamrick's Motion for Summary Judgment on Plaintiff's Section 1983 claim; (2) Hamrick's Motion for Summary Judgment on Plaintiff's tort claims of false imprisonment and assault and battery; and (2) the District's Motion for Summary Judgment on Plaintiff's tort claims.

## III.   LEGAL STANDARD

Summary judgment may be granted only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact is one that is capable of affecting the outcome of litigation.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  In a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255 (internal citations omitted).

---

[4] Even if Plaintiff's Section 1983 claim could be construed as asserting municipal liability, Plaintiff disavowed such a claim in his opposition.  *See* Pl.'s Reply to Defs.' Mot., ECF No. 22, at 2 [hereinafter Pl.'s Reply] (stating that he did not "wish to proceed against the District of Columbia on Count V" under "42 U.S.C. 1983").

The court does not "weigh the evidence and determine the truth of the matter but . . . determine[s] whether there is a genuine issue for trial." *Id.* at 249.

To prevail on a motion for summary judgment, the moving party must establish that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party must support the assertion that no facts are in dispute by "citing to particular parts of materials in the record, including . . . affidavits or declarations." Fed. R. Civ. P. 56(c)(1)(A). On the other hand, "to defeat a motion for summary judgment, the non-moving party must offer more than mere unsupported allegations or denials." *Dormu v. District of Columbia*, 795 F.Supp.2d 7, 17 (D.D.C. 2011) (citing to *Celotex*, 477 U.S. at 324). It must provide affidavits or other evidence setting forth specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

## IV.   ANALYSIS

### A.   Section 1983 Claim Against Hamrick

Section 1983 provides a remedy to individuals deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. 42 U.S.C. § 1983. A person so aggrieved is entitled to seek money damages from the state official who violated his constitutional rights. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). However, state officials who perform "discretionary functions"—like the municipal law enforcement officers in this case—may be entitled to qualified immunity for such alleged violations. *See id.*

In *Saucier v. Katz*, the Supreme Court set forth a two-step analysis for deciding whether qualified immunity shields a state official from civil liability. 533 U.S. 194, 201 (2001). First, the

court must ask whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[.]" *Id.* "[I]f a violation could be made out on a favorable view of the parties' submissions"—in other words, if the first question is answered in the affirmative—the court then must "ask whether the [constitutional] right was clearly established." *Id.* In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court clarified that the *Saucier* two-step procedure was not an "inflexible requirement," *id.* at 227, and that courts could consider either of the two steps first, *id.* at 224.

Before applying these principles, it is important to define the precise contours of Plaintiff's Section 1983 claim against Hamrick. In his Complaint, Plaintiff alleged that Hamrick "commit[ted] acts which deprived [him] of his Constitutional right to be free from an unreasonable seizure." Compl. ¶ 41. He also alleged that Hamrick "wrongfully, unlawfully, [and] maliciously used excessive force against Plaintiff when clearly no force was warranted under the circumstances." *Id.* ¶ 42.

In his Motion for Summary Judgment, Hamrick addressed the excessive force aspect of Plaintiff's Section 1983 claim. *See* Defs.' Mot. at 8-10 (arguing that the force used by "Officer Hamrick was *de [minimis]* at best"). In his Opposition, Plaintiff did not contest Hamrick's entitlement to qualified immunity on Plaintiff's excessive force claim; instead, he focused solely on the unlawful seizure aspect of his claim. *See generally* Pl.'s Reply at 9-13. By not responding to Hamrick's assertion of qualified immunity on his excessive force claim, Plaintiff has conceded that argument. *See Kone v. District of Columbia*, 808 F. Supp. 2d 80, 83 (D.D.C. 2011) ("[A]n argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded.") (citation omitted) (internal quotation marks omitted); *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this

Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendants, a court may treat those arguments that the plaintiff failed to address as conceded.") (citation omitted).   The court will thus enter summary judgment in Hamrick's favor on the excessive force component of Plaintiff's Section 1983 claim.

What remains then of Plaintiff's Section 1983 claim is his contention that Hamrick unlawfully seized him.   Plaintiff argues that "Hamrick['s] conduct[ ] violated his 4th Amendment Constitutional Right to be free from unreasonable seizure . . . [and that] [t]here is great dispute over whether the actions taken by Defendant Hamrick [in seizing and detaining Plaintiff] were reasonable."   Pl.'s Reply at 10.   Thus, under *Saucier*, the court first asks whether, viewing the facts in the light most favorable to Plaintiff, Hamrick seized Plaintiff in violation of his Fourth Amendment right to be free from unreasonable seizures.

> 1.   *Whether Hamrick's Investigatory Stop Violated the Fourth Amendment*

The constitutional inquiry in this case is controlled by the Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1 (1968).[5]   In *Terry*, the Court held that, consistent with the Fourth Amendment, a police officer may make a brief investigatory stop of a person if he acts upon a reasonable, articulable suspicion that the person has or is engaged in criminal activity.   392 U.S. at 30-31; *United States v. Clark*, 24 F.3d 299, 301 (D.C. Cir. 1994) (discussing *Terry*).   The same standard applies to truancy stops.   *See In re A.J.*, 63 A.3d 562, 568 (D.C. 2013) (likening a "temporary investigative seizure designed to determine whether [the plaintiff] was a truant" to a *Terry* stop).   In evaluating the reasonableness of an officer's suspicion, the court must consider "both the content of information possessed by police and its degree of reliability.   Both factors—

---

[5] The parties agree that Hamrick, at most, temporarily detained Plaintiff to determine if he was a truant.   *See* Pl.'s Reply at 12; Defs.' Reply to Pl.'s Opposition, ECF No. 23, at 3-4 [hereinafter Defs.' Reply].   Thus, it is immaterial that the parties disagree as to whether Hamrick cursed at Plaintiff or touched him to effect the stop.   What is at issue is whether Hamrick's stop was constitutionally justified, not the manner in which Hamrick conducted the stop.

quantity and quality—are considered in the 'totality of circumstances—the whole picture,' that must be taken into account when evaluating whether there is reasonable suspicion." *Alabama v. White*, 496 U.S. 325, 330 (1990) (citation omitted).

The court now delves into the "factbound morass of 'reasonableness.'" *Scott v. Harris*, 550 U.S. 372, 383 (2007).  According to Hamrick, he conducted a *Terry* stop of Plaintiff for two reasons.  First, he believed that Plaintiff looked like he was between the ages of 12 and 16 and thus was a truant.  Defs.' Mot. at 4; Hamrick Dep. at 23:16-19.  Second, Truancy Officer Smith confirmed that Plaintiff appeared to be a truant.  Defs.' Mot. at 4; Hamrick Dep. at 59:11-60:21. As Hamrick testified:  "Smith helped me explain[ ] to [Plaintiff] that he looked to be a truan[t] . . . .  Well, she identified that he looked to be a truant.  So, that was confirmation enough for me to . . . verify . . . the fact that he was a truant or not a truant."  Hamrick Dep. at 59:19-20, 60:13-16. Hamrick admitted that, once his suspicion about Plaintiff's age was confirmed by Smith, Plaintiff was not free to leave until he completed a truancy investigation. *Id.* at 60:13-21.  Thus, in assessing the constitutionality of Hamrick's investigatory stop under *Terry*, Smith's purported confirmation of Plaintiff's age is a critical fact.

The record evidence, however, is in dispute as to that critical fact.  Plaintiff's testimony flatly contradicts Hamrick's assertion that Smith said or did anything to support his suspicion that Plaintiff was a truant.  Plaintiff testified that he was approached by *both* Hamrick and Smith. Pl. Dep. at 34:6-9.  According to Plaintiff, during the initial moments of the stop, as Hamrick began to question him, Smith said "nothing" and did nothing more than stand near him. *Id.* at 36:6-8. Plaintiff testified that Smith actually knew him from previous truancy investigations and knew that he was over the age of 18. *Id.* at 36:10-37:1, 38:22-40:1.  Yet, she simply smiled and remained silent, even when Plaintiff asked her to tell Hamrick that he was telling the truth about his age. *Id.*

at 44:3-45:1.   Thus, rather than corroborating Hamrick's suspicion, Plaintiff recalled that, other than being physically present, Smith played no role in his detention.   This dispute of material fact—which, again, is pivotal to the constitutionality of Hamrick's stop—can only be resolved by a jury assessing Plaintiff's and Hamrick's conflicting testimonies.   *See Johnson v. District of Columbia*, 528 F.3d 969, 977 (D.C. Cir. 2008) (holding that conflicting testimony about whether the plaintiff's body language was threatening or suggested his intent to escape—which the officer claimed justified his use of force—precluded a grant of summary judgment on the plaintiff's Section 1983 excessive force claim).

Hamrick, of course, also testified that he approached and then stopped Plaintiff because he looked like a truant.   That testimony gives rise to the question:   Was Hamrick's subjective belief about Plaintiff's age sufficient, standing alone, to render the stop constitutional?  Not in this case— at least not at the summary judgment stage.   It is accurate to say that there is no evidence directly contradicting Hamrick's testimony that *he believed* Plaintiff looked like a truant.   For example, there is no proof that Hamrick told his partner that Plaintiff did not appear to be under the age of 18.   But such direct, contradictory evidence about Hamrick's subjective belief is not required to raise a genuine dispute of material fact.   Such a dispute can arise if "the evidence of the non-movant is to be believed," including "all justifiable inferences" drawn in the non-movant's favor. *Anderson*, 477 U.S. at 255.   Here, Hamrick inextricably linked his subjective assessment that Plaintiff looked like a truant with Smith's confirmation of that belief.   A jury that does not credit Hamrick's testimony about Smith's confirmatory role, but instead credits Plaintiff's rendition of events, could reasonably reject Hamrick's contention that he stopped Plaintiff because he looked to be 12 to 16 years old.  *See Moore v. Chesapeake & O. Ry. Co.*, 340 U.S. 573, 576 ("[I]t is the jury's function to credit or discredit all or part of the testimony.").   In other words, if a jury were

to reject one of Hamrick's reasons for effecting a *Terry* stop, it could reject the other.  Because there exists a genuine dispute of material fact about the grounds for Hamrick's stop of Plaintiff, the court cannot conclude, as a matter of law, that Hamrick's seizure of Plaintiff did not violate Plaintiff's constitutional rights.[6]

Hamrick argues that the court should not apply the *Terry* standard to evaluate the constitutionality of his stop of Plaintiff, but instead should be guided by the D.C. Code section which provides that a "law enforcement officer *shall* take into custody any child who the law enforcement officer has reasonable grounds to believe is a truant."  D.C. Code § 38-207(a)(3) (emphasis added); Defs.' Reply at 5.  Hamrick argues that "probable cause existed for the stop, and [he] not only had the right, but an affirmative duty to detain Plaintiff under the District's truancy laws."  Defs.' Reply at 5.

The court rejects Hamrick's argument for two reasons.  First, his reliance on "probable cause" is inapt.  Plaintiff does not contend that he was subject to arrest and, therefore, Hamrick required probable cause to detain him.  Indeed, in referencing probable cause, Hamrick invokes a more stringent standard than that which is required to conduct an investigatory stop under *Terry*. *See Terry*, 392 U.S. at 21-24.  Second, the fact that the D.C. statute imposes on police officers a duty to detain suspected truants does not relieve them of having to articulate reasonable grounds to stop them in the first place.  The truancy statute does not give officers license to stop youth on a whim.  To the contrary, it expressly requires that an officer have "reasonable grounds to believe [the youth] is a truant," D.C. Code § 38-207(a)(3), before effecting a stop and investigation.  In

---

[6] The court notes its disagreement with Plaintiff's argument that Hamrick acted unreasonably in stopping him because both he and his father told Hamrick that Plaintiff was over the age of 18.  Pl.'s Reply at 13.  Hamrick was not under any constitutional or statutory obligation to believe Plaintiff's or his father's statements about Plaintiff's true age and thus abandon his investigation.  Indeed, there is record evidence that Plaintiff's father had been untruthful about being D'Andre's father, thereby giving Hamrick reason to discredit Leroy Maddux's representation about Plaintiff's age.

any event, Hamrick does not argue that a police officer can stop a youth for a truancy investigation on grounds less than a reasonable, articulable suspicion of violating the truancy law. *See* Defs.' Reply at 5. Thus, the D.C. truancy statute does not excuse Hamrick's seizure of Plaintiff from meeting the minimum requirements of *Terry*.

### 2. Whether Plaintiff's Constitutional Right Was Clearly Established

Having determined that Plaintiff has articulated a constitutional violation sufficient to survive summary judgment, the court next considers the second *Saucier* inquiry: whether the constitutional right violated was "clearly established." *Saucier*, 533 U.S. at 201. Under this query, a state official is "shielded from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Mullenix v. Luna*, 577 U.S. __, No. 14-1143, 2015 WL 6829329, at *3 (Nov. 9, 2015) ("A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'") (citation omitted). Although a case need not exist that is directly on point, "'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Mullenix*, 2015 WL 6829329, at 3 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). As the Court recently stated in *Mullenix*: "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In deciding whether a right is clearly established, the court must first determine the appropriate level of generality to analyze the constitutional right at issue. *Johnson*, 528 F.3d at

975.   The Supreme Court repeatedly has emphasized that courts are not "to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742.   Rather, the "dispositive question" is "'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 2105 WL 6829329, at *3 (quoting *al-Kidd*, 563 U.S. at 742).   Thus, in this case, the court asks not whether Plaintiff had a right to be free from an unreasonable seizure—obviously he did—but whether, viewing the facts in the light most favorable to Plaintiff, a reasonable officer could have believed it was lawful to stop a youth for a truancy investigation without suspicion that the youth was a truant.   *See Johnson*, 528 F.3d at 975 (posing the second *Saucier* inquiry in the light most favorable to the plaintiff).

Framed as such, the question answers itself:   no reasonable police officer could have believed that a suspicionless investigatory stop of Plaintiff could be lawful.   *Terry* plainly requires an officer to have a reasonable, articulable suspicion of wrongdoing before stopping a person to investigate him or her.   *See Terry*, 392 U.S. at 21-24.   And the Court has held since *Terry* in several cases that "the absence of any articulable facts available to the officer render[s] a detention unreasonable."   *Michigan v. Summers*, 452 U.S. 692, 699 n.9 (1981) (citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *see also Brown v. Texas*, 443 U.S. 47 (1979); *Ybarra v. Illinois*, 444 U.S. 85 (1979)).   Moreover, as discussed, the D.C. truancy statute itself prohibits an officer from taking a youth into custody unless "the law enforcement officer has *reasonable grounds* to believe [the youth] is a truant."   D.C. Code § 38-207(a)(3) (emphasis added).   No reasonable officer could believe, in light of Supreme Court precedent and the plain statutory text, that an officer could lawfully detain a youth to conduct a truancy investigation without reasonable suspicion of a violation.   As noted, Hamrick does not contend otherwise.

In short, because the facts central to the question of whether Hamrick's temporary seizure of Plaintiff was reasonable are in dispute, this court cannot enter judgment in favor of Hamrick based on the defense of qualified immunity. *See Epps v. Gray*, 62 F. Supp. 3d 77, 88 (D.D.C. 2014) (noting that if there remain genuine issues of material fact "the [c]ourt cannot determine whether . . . defendants are entitled to qualified immunity"). It will be for a jury to decide whether to credit Hamrick's or Plaintiff's version of events and whether Hamrick in fact possessed a reasonable, articulable suspicion to detain Plaintiff for a truancy investigation.

### B.    False Imprisonment Claim Against Hamrick and the District

Plaintiff's claim of false imprisonment against Hamrick and the District rests on the same set of facts that underlie his Section 1983 claim. As a general matter, "[t]he essential elements of false imprisonment are: (1) the detention or restraint of one against his or her will, and (2) the unlawfulness of the detention or restraint." 32 Am. Jur. 2d *False Imprisonment* § 7 (2015). "In actions for false arrest and false imprisonment, the central issue is whether the arresting officer was justified in ordering the arrest of the plaintiff; if so, the conduct of the arresting officer is privileged and the action fails." *Scott v. District of Columbia*, 493 A.2d 319, 321 (D.C. 1985) (citation omitted) (internal quotation marks omitted). "A police officer may justify an arrest by showing that he or she had probable cause . . . to make the arrest," but it will also suffice "if the officer can demonstrate that (1) he or she believed, in good faith, that his [or her] conduct was lawful, and (2) this belief was reasonable." *District of Columbia v. Murphy*, 631 A.2d 34, 36 (D.C. 1993) (citation omitted) (internal quotation marks omitted). "The issue of probable cause in a false arrest case is a mixed question of law and fact that the trial court should ordinarily leave to the jury," and "it is only where the facts are undisputed or clearly established that probable cause becomes a question of law for the court." *Enders v. District of Columbia*, 4 A.3d 457, 469 (D.C.

2010) (citations omitted).  "Judgment as a matter of law cannot be granted unless the evidence is so clear that reasonable men could reach but one conclusion."  *Id.*

Although the foregoing cases speak of "false imprisonment" in terms of "false arrest," the principles articulated in those cases apply equally to cases, as here, where the allegation is one of an unlawful seizure short of arrest.  *See id.* at 461 ("'False arrest' is indistinguishable as a practical matter from . . . 'false imprisonment'").  The court's analysis differs only in that the key inquiry is not the existence or non-existence of probable cause for arrest, but of a reasonable, articulable suspicion to conduct an investigatory stop.

The court denies summary judgment on Plaintiff's false arrest claim for the same reason that it denied summary judgment on Plaintiff's Section 1983 claim—material facts are in dispute about the reasonableness of Hamrick's investigative detention of Plaintiff.  As discussed above, Plaintiff's and Hamrick's testimony conflict with regard to the role that Smith played in Plaintiff's stop.  A jury will have to decide which version to credit.

### C.    Assault and Battery Claim Against Hamrick and the District

Plaintiff's assault and battery claim rests on two grounds.  First, he asserts, quite narrowly, that Hamrick assaulted and battered him when he "put his hands on [him,] took hold of him [and] positioned him on the vehicle for arrest."  Pl.'s Reply at 16; *see also id.* ("Hamrick admits he caused the offensive contact with the Plaintiff; Maddux was in fact grabbed and put up against a vehicle by Hamrick.").[7]  Second, he claims that McDonald assaulted and battered him when McDonald handcuffed him, which resulted in a broken hand.  Under Plaintiff's second theory, the

---

[7] Critically, Plaintiff does not claim that Hamrick assaulted him by twisting his arm and handcuffing him, *see id.*, even though Hamrick testified that it was he who handcuffed Plaintiff.  Hamrick Dep. at 61:9-11.  Plaintiff likely does not advance such a theory against Hamrick because Plaintiff testified that it was McDonald, not Hamrick, who twisted his arm and handcuffed him.  Pl. Dep. at 45:17-46:3, 48:5-20, 68:1-69:6.

District is vicariously liable for McDonald's tortious act pursuant to the doctrine of *respondeat superior*, even though McDonald is not a party to the lawsuit.  *See* Pl.'s Reply at 18-19.

Under District of Columbia law, an assault is defined as "an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim," and a battery is "an intentional act that causes a harmful or offensive bodily contact."  *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993) (internal citations omitted).  Although these "technical requirements" are satisfied here, as is often the case when the accused are police officers, this case "turns on the defense of privilege."  *District of Columbia v. Chinn*, 839 A.2d 701, 705-6 (D.C. 2003).

Officers in the District of Columbia have "a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not 'in excess of those which the actor reasonably believes to be necessary.'"  *Etheredge*, 635 A.2d at 916 (quoting *Jackson v. District of Columbia*, 412 A.2d 948, 956 (D.C. 1980)).  "[T]he 'reasonableness' of a particular act of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.* at 392-93 (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).  Key considerations in making a reasonableness determination include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers . . . , and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Young v. Scales*, 873 A.2d 337, 343-44 (D.C. 2005) (quoting *Graham*, 490 U.S. at 396).  Because the D.C. Court of Appeals has "specifically left open the question of who bears the burden on the privilege issue" in excessive force cases, *Kotsch v. District of Columbia*, 924 A.2d 1040, 1047-50 (D.C. 2007) (citation omitted (internal quotation marks omitted), the moving party must demonstrate "that it would be entitled

to summary judgment even if it was saddled with the burden of proof." *Buruca v. District of Columbia*, 902 F. Supp. 2d 75, 81 (D.D.C. 2012) (citation omitted).

As to Plaintiff's assault and battery claim against Hamrick individually (and against the District vicariously for Hamrick's actions), summary judgment is precluded because the facts are in dispute. Hamrick argues that his touching of Plaintiff—by taking hold of Plaintiff, turning him around, and preparing to handcuff him—was a privileged use of force to effect a stop in order to conduct a truancy investigation. Defs.' Mot. at 12-13. But the facts leading up to Hamrick's restraint of Plaintiff are hotly contested. According to Hamrick, before he subdued Plaintiff, Plaintiff had become increasingly unruly due to the presence of his father. Hamrick Dep. at 53:15-54:6. Hamrick also testified that Plaintiff was verbally aggressive and balled up his fists. *Id.* at 48:17-21.

Plaintiff, on the other hand, recounted a different version of events. According to Plaintiff, after Hamrick cursed at him and told him to stop walking, he complied, leaning against a nearby car to demonstrate that he had no intention of running. Pl. Dep. at 34:10-35:18, 62:10-18. Hamrick nevertheless continued to harass and berate him. *Id.* 36:2-5, 52:14-19, 62:19-63:2. And, when Plaintiff told Hamrick that his father—who could verify his age—was nearby, Hamrick suddenly grabbed Plaintiff's left arm, walked him to another car, and placed him on the back of the car to handcuff him. *Id.* at 45:14-17, 63:16-64:20, 65:3-11. The conduct that Plaintiff describes, if credited, appears "entirely gratuitous, and unrelated to any legitimate police objective." *Qutb v. Ramsey*, 285 F. Supp. 2d 33, 51 (D.D.C. 2003). Given these conflicting presentations of the facts, the court cannot grant summary judgment in favor of Hamrick or the District on Plaintiff's assault

and battery claim.  *See Qutb*, 285 F. Supp. 2d at 51 (denying summary judgment on the plaintiff's assault and battery claim where the facts were in dispute).[8]

The court, however, reaches a different conclusion with respect to Plaintiff's assertion that McDonald's actions constituted an assault and battery.  McDonald testified that, before he intervened, he observed Plaintiff and his father becoming "irate."  McDonald Dep. at 73:1-2.  He did not recall handcuffing Plaintiff.  *Id.* at 73:12-14.  Plaintiff, in contrast, testified that McDonald, not Hamrick, twisted his arm and caused it to break while handcuffing him.  Pl. Dep. at 46:7-13, 68:9-69:6.  But Plaintiff has offered no facts that would establish that McDonald's actions, *from McDonald's perspective*, were unreasonable or excessive.  Plaintiff has not presented evidence that, when McDonald approached him, McDonald (or a reasonable officer in his position) would not have thought it reasonable to restrain and handcuff Plaintiff.  For instance, Plaintiff has not presented any evidence establishing that McDonald would have known, as Plaintiff testified, that he was cooperating with Hamrick and not resisting arrest.  To the contrary, even under Plaintiff's version of events, McDonald appears to have done little more than assist a fellow officer who he believed was attempting to subdue a suspect.  Such conduct by an officer is privileged.

That McDonald's use of force resulted in Plaintiff having a broken hand does not automatically render McDonald's conduct an assault.  Rather, for a use of force to be non-privileged, "the means employed [must be] in excess of those which the actor reasonably believes to be necessary."  *Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C. 1997) (citation omitted).  Here, Plaintiff testified that McDonald took and twisted his hand while attempting to

---

[8] Hamrick also seems to argue that he is entitled to summary judgment because, on Plaintiff's version of events, his restraint of Plaintiff did not "hurt" him.  Defs.' Mot. at 13.  That argument is misplaced.  Neither a consummated assault nor battery requires a resulting physical injury.  An assault requires only an *attempt* to do physical harm, *see Etheredge*, 635 A.2d at 916, and a battery requires only offensive bodily contact, *see id.*  A non-privileged, offensive touching of the kind at issue here, at least, makes out a claim of battery.

handcuff him.  Plaintiff presented no evidence, from an expert or any other source, that such use

of force was excessive in the circumstances presented.  As the Supreme Court has cautioned, "[t]he

calculus of reasonableness must embody allowance for the fact that police officers are often forced

to make split-second judgments—in circumstances that are tense, uncertain, and rapidly

evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S.

at 396-97.  The record before the court does not present a genuine dispute of material fact about

McDonald's use of force.  Therefore, the court will grant summary judgment in favor of the District

on Plaintiff's assault and battery claim to the extent it rests on McDonald's conduct.

### D.        Adequacy of Plaintiff's D.C. Code § 12-309 Notice

The District argues that judgment must be entered in its favor on both of Plaintiff's tort

claims—false imprisonment and assault and battery—because Plaintiff failed to comply with the

statutory notice requirement imposed by D.C. Code § 12-309.  That statute provides:

> [A]n action may not be maintained against the District of Columbia for unliquidated
> damages . . . unless, within six months after the injury or damage was sustained,
> the claimant . . . has given notice in writing to the Mayor of the District of Columbia
> of the approximate time, place, cause, and circumstances of the injury or damage.
> A report in writing by the Metropolitan Police Department, in regular course of
> duty, is a sufficient notice.

D.C. Code § 12-309 (2012).  To comply with this requirement, Plaintiff sent a letter to the Mayor

on January 27, 2014, notifying him that he intended to bring suit regarding the November 14, 2013

incident.  Pl.'s First Notice, ECF No. 20-5, at 1 [hereinafter First Notice].  The First Notice

specified the date of the incident, the names of the officers involved, the cause of Plaintiff's injury,

and the circumstances underlying his Complaint.  *See id.*  It did not, however, identify the location

of the events in question.  Perhaps realizing this omission, Plaintiff sent a second notice on May

13, 2014—*after* he filed suit—which specified the address of the McDonald's where the incident

occurred.  Pl.'s Second Notice, ECF No. 22-2, at 1 [hereinafter Second Notice].  Separately,

Hamrick prepared a police report about his encounter with Plaintiff, which listed the time, date, location, and individuals involved, though it did not mention an injury to Plaintiff's hand.  Incident Report, ECF No. 20-6, at 1-2 [hereinafter Incident Report].

The District argues that Plaintiff's failure to specify the location where the events in question occurred rendered his First Notice fatally deficient under § 12-309.  Defs.' Mot. at 16. The Second Notice, the District contends, cannot cure the First because it was submitted after this suit was filed.  Defs.' Reply at 8.  Additionally, the District contends that the police report does not provide sufficient notice on its own because it does not reference any injury to Plaintiff or otherwise suggest that the District could be liable for the officers' conduct.  Defs.' Mot. at 17-18.

"The rationale underlying the Section 309 notice requirement is to (1) protect the District of Columbia against unreasonable claims and (2) to give reasonable notice to the District of Columbia so that the facts may be ascertained and, if possible, deserving claims adjusted and meritless claims resisted."  *Pitts v. District of Columbia*, 391 A.2d 803, 807 (D.C. 1978) (internal citations omitted).  Although the notice requirement of § 12-309 is mandatory, "greater liberality is appropriate with respect to the content of the notice," and courts generally "resolve doubts in favor of finding compliance with the statute."  *Wharton v. District of Columbia*, 666 A.2d 1227, 1230 (D.C. 1995) (internal citations omitted); *see also Washington v. District of Columbia*, 429 A.2d 1362, 1365 (D.C. 1981) (*en banc*) (explaining that "with respect to the details of the statement (giving notice), precise exactness is not absolutely essential") (citations omitted) (internal quotation marks omitted).  "[N]otice under the statute need only 'furnish a reasonable guide for inspection . . . and provide an early warning to District of Columbia officials regarding litigation likely to occur in the future.'"  *Wharton*, 666 A.2d at 1230 (quoting *Gaskins v. District of*

*Columbia*, 579 A.2d 719, 721 (D.C. 1990)). Simply put, technical imperfection will not deprive a plaintiff of his day in court. *Wharton*, 666 A.2d at 1231.

Furthermore, the D.C. Court of Appeals has held that the requisite notice under § 12-309 need not be contained in a single document. *See Enders*, 4 A.3d at 468 (holding that "this jurisdiction has not required that the District be given notice of an impending suit in a single document"). In *Enders*, the court concluded that the plaintiff's notice letter, "read together with the police report of the arrest [the plaintiff] identifies in the letter," provided all the information required by the notice statute and thus satisfied its requirements. *See id.*

As in *Enders*, the court here concludes that the combination of Plaintiff's First Notice and Hamrick's police report provided the District with the requisite notice under § 12-309. The First Notice specified the date of the incident, the names of the officers involved, the cause, and the circumstances of the suit. First Notice at 1-2. Though the location was omitted, that fact was provided in Hamrick's police report. Incident Report at 1-2. Thus, once it received the First Notice, the District was on sufficient notice to identify and investigate the events underlying Plaintiff's threatened claims.

## V.    CONCLUSION AND ORDER

For the reasons set forth above, the court grants Defendants' Motion for Summary Judgment in part and denies it in part. The court enters judgment in favor of: (1) Hamrick on Plaintiff's Section 1983 claim to the extent it rests on a theory of excessive force; (2) the District on Plaintiff's assault and battery claim insofar as it rests on McDonald's actions; (3) Hamrick and the District on Plaintiff's conceded claim of negligent infliction of emotional distress; and (4) the District on Plaintiff's conceded claim of negligent training and supervision. Defendants' Motion for Summary Judgment is denied in all other respects.

Dated:  November 16, 2015

Amit P. Mehta
United States District Judge